UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

JOSHUA ALVARINO,

                    Plaintiff,

                  -against-

VINCENT F. DeMARCO, CHARLES EWALD,
EDWARD WALSH, ARTHUR LaFRANCA,
INVESTIGATOR JACKSON,
INVESTIGATOR SANTACRUZ, JOHN DOE
#1, JANE DOE #1, JOHN DOE #2, JOHN DOE
#3, JOHN DOE #4, JOHN DOE #5, JOHN DOE
#7, JOHN DOE #10, JOHN DOE #11, JOHN
DOE #12, and THE COUNTY OF SUFFOLK,

                  Defendants.

------------------------------------------------------------ x

**OPINION & ORDER**

16-cv-1046 (NG)(RER)

**GERSHON, United States District Judge:**

      Plaintiff Joshua Alvarino brings this civil rights action against defendants Vincent F. DeMarco, Charles Ewald, Edward Walsh, Arthur LaFranca, Investigator Jackson, Investigator Santacruz, the County of Suffolk, and ten John and Jane Doe defendants. He asserts claims under 42 U.S.C. § 1983 related to his pre-trial detention at Suffolk County Correctional Facility ("SCCF") in Riverhead, New York from September 2013 through December of 2013. The Amended Complaint contains seven causes of action arising under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. The claims allege the excessive use of force, denial of medical care, sexual harassment, failure to supervise other officers, retaliation against plaintiff for the airing of grievances, deliberate indifference to plaintiff's welfare, and municipal liability. Defendants now move for summary judgment on all of plaintiff's claims. For the reasons stated below, defendants' motion is granted.

## I.  Procedural History

Plaintiff filed his initial complaint *pro se* on February 26, 2016, and the case was originally assigned to the Honorable Joan M. Azrack. On March 8, 2017, Judge Azrack approved plaintiff's motion for the appointment of counsel, and on March 23, 2017, she appointed plaintiff counsel from the Law Offices of Christopher J. Cassar, P.C. Counsel filed the Amended Complaint on September 28, 2017, though it was not deemed the operative complaint until February 26, 2018. This matter was then transferred to me on March 25, 2019. Following discovery, defendants moved for summary judgment.

## II.  Summary Judgment Standard

Rule 56(c) allows the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Id.* at 323. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted), or "rest upon the mere allegations or denials" asserted in the pleadings, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Instead, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Defendants move to dismiss the action on five grounds: (1) plaintiff's claims are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e, *et seq.* ("PLRA"); (2) plaintiff fails to meet his burden of demonstrating individual liability of the named defendants; (3) the municipal liability claim against the County fails because plaintiff has not adduced evidence of a relevant custom or policy; (4) the excessive use of force claim must be dismissed because plaintiff sustained only *de minimis* injury; and (5) much of the conduct complained of is not unconstitutional. While plaintiff bears the burden of proof at trial for establishing the elements essential to his claims, defendants' argument regarding the Prison Litigation Reform Act addresses an affirmative defense for which the defendants bear the burden of production and persuasion.

## III. Plaintiff's Allegations

In support of their motion for summary judgment, defendants both point to a lack of evidence supporting plaintiff's claims and submit evidence in the form of affidavits from witnesses with knowledge to support their affirmative defense. In response, plaintiff merely attaches the entire deposition of Mr. Alvarino to his opposition.[1] In fact, plaintiff's memorandum of law cites only to the Amended Complaint—not referencing a single line of the deposition of Mr. Alvarino. Even though plaintiff has failed to properly contest the facts asserted by defendants, I have thoroughly examined the record provided by the parties to determine whether any material issues of fact remain for trial. *See, e.g., Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *Buckley v. County of Suffolk*, 2013 WL 122972, at *1 (E.D.N.Y. Jan. 9, 2013).

---

[1] Plaintiff also has failed to file a counter-statement, as required by Local Civil Rule 56.1.

It is undisputed that plaintiff, who was 16 years old at all relevant times, was incarcerated in protective custody in SCCF during the period of September 15, 2013 through December 12, 2013. Alvarino Dep. at 26:23–27:7. Plaintiff sues for a series of abuses that he suffered while incarcerated, which he attributes to defendants' knowledge that he was being prosecuted for the alleged sexual abuse of seven-year-old children. *Id.* at 18:21–19:22; 56:19–24; 58:23–59:12; 61:4–12; 62:21–63:16.

Plaintiff testified that an officer directed him to "dance like a ballerina" and put toilet paper on his head; an officer threw liquid that smelled like hand sanitizer at him; an officer threw toilet paper at him which plaintiff then had to clean up; and an officer made him walk without his shoes in water that had overflowed from a toilet during a search of plaintiff's cell. *Id.* at 48:20–76:6. Plaintiff accuses two different officers of slapping him in the face on two occasions. *Id.* at 58:21–60:19; 66:21–70:5. Plaintiff also testified to abusive, sexually-tinged taunting and offensive comments about plaintiff's perceived sexual orientation arising out the officers' awareness of the charges against him. *Id.* at 61:4–12; 62:21–65:12.

Plaintiff further testified that he was sexually abused by a fellow inmate named Chica on two occasions. While the opposition to the motion for summary judgment relies on the pleadings and states that, during the first incident with Chica in October of 2013, Chica "pressed his penis against plaintiff's butt, and thrusted and continuously rubbed his penis against the butt of plaintiff" (Pl.'s Mem. of Law at 5), plaintiff's own deposition testimony states that Chica came "closer" to plaintiff and that Chica's penis was "by [plainitff's] butt," but he did not testify to any contact, Alvarino Dep. at 73:2–14. Plaintiff testified to a second incident involving Chica a month later, in which Chica pulled plaintiff into a cell, threw him onto a bed and "dry humped" him. *Id.* at 73:25–74:9. Plaintiff testified that he never informed correctional staff about the first assault by

4

Chica and that, within "hours" of alerting the correctional staff to Chica's abuse after the second incident, Chica was moved to another housing area. *Id.* at 73:1–74:19. Plaintiff testified that he did not have any reason to believe that Chica's assaults were directed by an individual defendant or Suffolk County. *Id.* at 74:20–22.

Plaintiff testified that he made entries in his personal journal about each incident complained of, but that he threw the journal away. *Id.* at 71:23–72:18. By the time of his deposition, plaintiff was unable to recall the dates when the incidents took place. *Id.* at 49:4–17.

Other facts in the record are addressed below where pertinent to the arguments for dismissal.

## IV. Prison Litigation Reform Act

The record establishes that, in 2013, SCCF maintained a formal procedure available to inmates who wished to seek relief for their grievances. That procedure, called the Inmate Grievance Program ("IGP"), was set forth in the Inmate Handbook that was given to inmates when they entered the jail. Ex. A.

According to the IGP, in order to grieve conditions of confinement,[2] the inmate grievance process proceeded as follows:

   a. Attempt to resolve it with the officer assigned to your particular housing unit.
   b. If for some reason you and the officer are unable to reach an acceptable resolution, you may request and will receive a grievance form to fill out. You may request and receive assistance in filling out the grievance forms. Only one issue is to be included on any Grievance Form. Use a separate form for each specific complaint.
   c. The grievance form will be forwarded to the Sergeant assigned to your housing unit. The Sergeant may attempt to resolve the grievance.
   d. If the issue is still not resolved, the Housing Sergeant will forward the grievance to the Grievance Coordinator.

---

[2] Defined as any condition of confinement, with the exception of: (1) challenges to penalties resulting from disciplinary hearings; (2) challenges to administrative segregation housing decisions; (3) issues outside of the Warden's control; and (4) complaints about other inmates. Ex. A at C.2.

e. Your completed grievance form will be investigated and you will receive a written determination from the Grievance Coordinator within 5 business days. If additional information is required, you have two (2) days to comply with the request.
f. If you do not agree with the Grievance Coordinator's decision, you will have two (2) business days to appeal the determination to the Warden. You cannot appeal the acceptance of your grievance.
g. You will receive a written determination from the Warden within five (5) business days.
h. If your appeal to the Warden results in an unfavorable decision, you may appeal such determination to the State Commission of Correction within three (3) business days. You cannot appeal the Warden's acceptance of your grievance.
i. The Grievance Coordinator will forward your appeal to the State Commission of Correction within three (3) business days of receiving it and you will be provided with a receipt.
j. The Commission shall render a written determination on the grievance within forty-five (45) business days; you will be notified by the Commission of their decision by mail.

*Id.* at C.2. An inmate was required to file a grievance within five days of the date of the incident giving rise to the grievance. *Id.* at C.1. The IGP did not allow for non-inmates to make grievances to the Inmate Grievance Unit. Ex. A; Decl. of Vincent Worthington; Dec. of Arthur LaFranca. It also did not allow for the Internal Affairs Section of the Sheriff's Office to receive or address grievances. *Id.*

In support of their motion for summary judgment, defendants present evidence that, during his incarceration at SCCF, plaintiff never filed a grievance under the IGP. Decl. of Vincent Worthington at ¶ 8. In opposition, plaintiff relies on the allegations in his Amended Complaint that his mother sent a grievance on his behalf and that he filed supplemental letters and appeals. However, at his deposition, plaintiff testified that, while he sent something to his mother, he did not personally send any grievances or appeals to anyone at SCCF. Alvarino Dep. at 79:20–80:5. Plaintiff also has not produced deposition testimony or an affidavit from his mother attesting to the fact that she sent a grievance to the facility. And plaintiff has not produced a copy of any

grievance or appeal that he or his mother sent to anyone at SCCF. In sum, there is no admissible record or testimonial evidence that any grievance was ever submitted.

Defendants argue that, because plaintiff failed to file a grievance with the SCCF's Inmate Grievance Program before bringing this action, as required by the PLRA, his failure to invoke and exhaust his administrative remedies bars him from proceeding with this case. *See* 42 U.S.C. § 1997e(a). The PLRA was enacted in order "to reduce the quantity and improve the quality of prisoner suits and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (internal quotation marks and citation omitted). It provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1858 (2016).

The exhaustion requirement is "mandatory," and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). As the Supreme Court has made clear, the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, the PLRA mandates "proper exhaustion" of all remedies which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted).

"[P]risoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance

7

process." *Jones*, 549 U.S. at 218. Thus, I must "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). Failure to exhaust the PLRA's administrative remedies is an affirmative defense. *See Jenkins v. Haubert*, 179 F.3d 19, 28–29 (2d Cir. 1999).

As described above, SCCF's grievance procedure required plaintiff to personally submit a grievance within five days of each incident of which he complains. It also required plaintiff to appeal the Grievance Coordinator's decision to the Warden within two business days, and to appeal any negative response from the Warden to the State Commission of Correction within three business days.

Though there is no record that plaintiff ever filed any grievance under the IGP, plaintiff argues that his claims nonetheless survive the PLRA's exhaustion requirement because "defendants have failed to bear the initial burden of establishing . . . that a grievance process exists and applies to the underlying dispute." Pl.'s Mem. of Law at 19. I disagree that defendants failed to meet their burden of establishing that a grievance process exists. However, I find that the grievance process does not apply to every claim in this case.

Defendants met their burden by adducing admissible evidence—specifically, the Declaration of Vincent Worthington and the Inmate Handbook—that a formal Inmate Grievance Program existed at the relevant time, that all inmates were provided a copy of the Inmate Handbook, and that the IGP covered most of plaintiff's complaints about his confinement.[3] Plaintiff has failed to offer any evidence that counters this. Indeed, in his deposition, which

---

[3] I reject plaintiff's argument that the excerpt of the Inmate Handbook provided to the court was "misleading" because it contained language relating to a separate complaint procedure on the same page as the IGP.

plaintiff annexes to his opposition, plaintiff indicates that he did prepare a grievance, but sent it to his mother, instead of to the prison directly. Alvarino Dep. at 79:20–80:5. From this statement, I discern that plaintiff was aware of the IGP and of his ability to file grievances.[4]

At the same time, I note that the IGP does not require inmates to grieve "complaints about other inmates." Ex. A at C.2. Therefore, defendants have not met their burden of demonstrating that plaintiff was required to exhaust his administrative remedies before bringing his claims of deliberate indifference to his welfare relating to his assaults by Chica in this court.

Accordingly, because I find that the defendants have proven their affirmative defense that plaintiff failed to comply with the PLRA's exhaustion requirements, I grant summary judgment to defendants on plaintiff's claims of excessive use of force, denial of medical care, sexual harassment, and retaliation against plaintiff for the airing of grievances. However, plaintiff's claims of deliberate indifference to his welfare and failure to supervise other officers related to that claim, survive the affirmative defense.

---

[4] Even if the allegations of the Amended Complaint had been supported by admissible evidence, plaintiff's alleged grievances and appeals were filed beyond the time permitted by the IGP and he thus failed to properly exhaust his administrative remedies. Specifically, plaintiff alleges that on November 8, 2013, he filed a single grievance for all prior encounters that occurred between September 26, 2013 and October 23, 2013. Am. Compl. at ¶ 182. If true, the grievance would have been submitted more than five days after even the latest occurrence, in violation of the IGP. On December 11, 2013, plaintiff alleges that a "communication" was transmitted to "put officials at the jail on notice" about an incident that occurred that same day. *Id.* at ¶ 188. Plaintiff states that this communication and the prior grievance were supported by a "statement in supplement" dated January 10, 2014, once plaintiff had been released from SCCF. *Id.* Additionally, plaintiff alleges that he filed a further grievance on January 31, 2014, "complaining of the latest misconduct, and incorporating the earlier November 8, 2013 grievance and letter of complaint." *Id.* at ¶ 196. Having heard no response, "plaintiff deemed the relief sought by his letters and appeals at each level of the grievance process constructively denied, and has taken an appeal to each and every level of review that was available." *Id.* at ¶ 199. Even if I were to consider the January 10, 2014 and January 31, 2014 correspondence as appeals, they were untimely because they were allegedly sent beyond the time permitted by the IGP.

## V. Individual Liability

In any event, none of the claims can survive plaintiff's inability to establish the individual liability of any of the defendants. The Amended Complaint names six individuals as defendants in this matter. According to plaintiff, defendant Ewald was a Warden in the County of Suffolk, defendant Walsh was a Lieutenant, defendant LaFranca was an Internal Affairs Investigator, and defendants Jackson and Santacruz were Security Investigators. Am. Compl. at ¶¶ 6–10. According to the pleadings, defendant Walsh was prosecuted for falsifying time records, which plaintiff alleged "served to ratify and exacerbate the misconduct and adverse conditions that existed at the jail." *Id.* at ¶¶ 174–79. Plaintiff accuses defendants DeMarco and Ewald of failing to "properly supervise defendant Walsh, as well as other supervisors and employees." *Id.* at ¶ 180. And he alleges that defendants Santacruz and Jackson failed to properly respond to a written complaint from another inmate in August of 2013 about Chica, amounting to deliberate indifference to plaintiff's welfare. *Id.* at ¶ 92. Finally, plaintiff alleges that defendant LaFranca investigated a grievance that plaintiff's mother allegedly mailed on his behalf and later "solicited plaintiff to sign documentation that officials purport allowed the withdrawal and closure of said grievance." *Id.* at ¶¶ 185–95.

But plaintiff neither testified about any of these defendants, nor submitted any evidence regarding their involvement in the incidents at issue. Therefore, defendants are correct that plaintiff is unable to demonstrate liability on the part of the individually named defendants because he has not met his burden of showing each defendant's personal involvement in the alleged constitutional deprivation. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Plaintiff has failed to address the factual arguments raised by defendants and instead relies on inapplicable case law relating to Rule 12 motions. But a plaintiff cannot avoid summary judgment "by relying on the allegations in his pleading, . . . or on conclusory statements, or on mere assertions that affidavits

supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

To begin with, plaintiff could not identify any of the named defendants at his deposition as having taken part in any of the abuses of which he complains. Alvarino Dep. at 90:12–91:21. Indeed, plaintiff testified that "[a]ll of the [Correction Officers] that did stuff to [him] are John Does." *Id.* at 91:20–21. However, because more than 90 days have passed since the Amended Complaint was filed, and the John and Jane Doe defendants have not been named, let alone served with process, they are dismissed from the action without prejudice. *See* Fed. R. Civ. P. 4(m).

Regarding defendants DeMarco and Ewald, plaintiff has failed to adduce evidence of their liability as supervisory personnel. He has not shown that they failed to remedy a wrong after having been advised of it; created or allowed the continuance of an unconstitutional policy or custom; engaged in gross negligence in supervising their subordinates; or exhibited deliberate indifference by failing to act on information that unconstitutional acts were occurring. *See Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Thus, they are dismissed as defendants.

With regard to defendant LaFranca, as stated by him in his unchallenged declaration, he has been assigned since 2007 to the Internal Affairs Section of the Sheriff's Office, which has never been under the supervision of the Corrections Bureau, which operates SCCF. Defendant LaFranca was not a prison official, and plaintiff was not in his custody. Plaintiff has not met his burden of showing that defendant LaFranca was individually liable for any of the violations for which plaintiff sues. Similarly, with regard to defendant Walsh, I agree with defendants that the mere allegation in the Amended Complaint that he was prosecuted for falsifying his time records is insufficient to establish liability because plaintiff has failed to connect that misconduct with any

11

of the abuses of which plaintiff complains. Defendants LaFranca and Walsh are dismissed as defendants.

What remains is plaintiff's claim of deliberate indifference related to his sexual assaults by Chica as against defendants Jackson and Santacruz. Plaintiff made no effort to respond to defendants' argument that defendants Jackson and Santacruz were not personally involved in abridging plaintiff's civil rights and were not individually liable for protecting him from Chica. Plaintiff neither testified about these defendants, nor submitted any evidence regarding their involvement in the incidents at issue. They are therefore dismissed as defendants.

In sum, plaintiff cannot survive summary judgment by relying on the mere allegations against the individual defendants asserted in his Amended Complaint. *See Anderson*, 477 U.S. at 256. Because plaintiff bears the burden of proof of each defendant's individual liability at trial, in response to defendants' summary judgment motion, he was required to submit evidence demonstrating that a genuine issue of material fact remained for trial. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587. He did not do so. The claims against the individually named defendants are therefore dismissed.

## VI.     Municipal Liability

Plaintiff also brings claims against Suffolk County. Under *Monell v. Department of Social Services*, a municipality may be held liable under § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. 658, 694–95 (1978). Municipal liability may exist only where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.

Plaintiff has offered nothing but the conclusory statement that a custom or policy of defendant County of Suffolk caused his constitutional rights to be violated. Plaintiff simply asserts, without citing to any evidence in the record, that defendants do not dispute that "'it is the

policy and practice' of the Suffolk County Correctional Officers to harass and assault the plaintiff and this conduct by the Suffolk County Correctional Officers was 'officially adopted and promulgated by [the municipality's] officers.'" Pl.'s Mem. of Law at 20. This conclusory argument is insufficient. *See, e.g.*, *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1224 (2d Cir. 1994); *Gianullo*, 322 F.3d at 141 n.2; *Parker v. Sony Pictures Etm't Inc.*, 260 F.3d 100, 111 (2d Cir. 2001). Accordingly, the County is entitled to summary judgment on the *Monell* claim.

## VII. Remaining Arguments

Because all of plaintiff's claims have been dismissed, I need not address defendants' final two arguments, that plaintiff cannot maintain a claim for excessive use of force because he sustained only a *de minimus* injury and that he cannot recover for certain conduct of John Doe officers because it was not unconstitutional.

## VIII. Conclusion

For the reasons set forth above, defendants' motion for summary judgment is granted. The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

/s/
**NINA GERSHON**
**United States District Judge**

June 23, 2021
Brooklyn, New York

13